DANIEL W. MYERS v. ADOLPH FOLKMAN ET AL.

Argued February Term, 1914—Decided June 2, 1914.

Myers bought land of Leedom by a description, bounding on Doyle's line, and leased to Doyle, who remained in possession for several years; thereafter Myers claimed to have acquired part of Doyle's land by adverse possession; to establish twenty years' possession it was necessary to rely on Doyle's occupancy. *Held*, that clear and convincing evidence is required to prove that the circumstances attending the tenancy were such that Doyle's possession was adverse to his own title.

---

On ejectment. On defendant's rule to show cause.

Before Justices SWAYZE and BERGEN.

For the plaintiff, *Harry R. Coulomb* (*Bourgeois & Coulomb* on the brief).

For the defendants, *Ulysses G. Styron* (*John W. Wescott*, attorney-general, with him).

The opinion of the court was delivered by

SWAYZE, J.  The plaintiff claims title by adverse possession to the land in controversy; he has no other.  The paper-title was in David Doyle from September 20th, 1877, until his death about 1898.  The plaintiff bought the lot adjoining Doyle from Leedom in 1890; the description in his deed bounds his land by Doyle's line and describes it by metes and bounds which do not cover any of the disputed land; without this the plaintiff has in fact all the land described in his deed.  His claim is that Leedom, his grantor, was at the time in possession of the disputed land and had built bath houses thereon.  Leedom's title came from the same grantor as Doyle's by deed of August 1st, 1877.  As not quite thirteen years had elapsed at the time of the deed from Leedom to Myers, no title to the disputed land could have been conveyed, as indeed none was attempted to be conveyed, by Leedom.  Myers, however, relies on tacking Leedom's possession to subsequent possession to make the necessary twenty years.  The important question in the case is whether Myers had possession from April, 1890, when he bought, to 1906, when he conveyed to Moore.  He did not have actual possession himself; that was in David Doyle from 1890 to his death, and afterward in his sister Mrs. Henry.  Assuming that Myers acquired any possessory right from Leedom, the question then narrows to this: Was the possession by Doyle and Henry of their own land the possession of Myers and adverse to their own title?  The proposition that a man in actual possession of his own land is really holding against himself and will make a title in another if he remains in possession long enough is a startling one.  If not theoretically impossible, the case in which it occurs must be so rare that it is no wonder that we are referred to no authorities sustaining

the proposition. The only theory suggested that would make the actual possession by Doyle of his own land adverse to himself is that immediately upon Myers' acquiring title, he made a lease to Doyle and put him in possession, so that Doyle could not, while he retained the possession thus acquired, dispute his landlord's title. The estoppel of the · tenant rests upon an express or implied admission of the landlord's title arising out of an entry by the landlord's permission. 24 *Cyc.* 937; *Howell* v. *Ashmore,* 22 *N. J. L.* 261; *Shields* v. *Lozear,* 34 *Id.* 496; *Tayl. L. & T.,* § 89. It was necessary for the plaintiff to prove that Doyle's possession of the disputed land came from the plaintiff's lease rather than from his own title, and upon well-settled principles relating to title by adverse possession, the claimant must prove it by clear and convincing evidence. Chief Justice Green went so far as to say, "beyond a reasonable doubt." *Rowland* v. *Updike,* 28 *N. J. L.* 101. The Court of Errors and Appeals has said that where the possession of land is separated from the title, the law will not presume that the possession is adverse, but every presumption is in favor of possession in subordination to the title of the true owner. *Johanson* v. *Atlantic City Railroad Co.,* 73 *Id.* 767. The lease to Doyle was not produced. Doyle is dead; the only testimony with reference to Doyle's entry is that of Myers himself, and his testimony is at best uncertain. He repeatedly says that he leased to Doyle the property bought of Leedom; just as he bought it from Leedom; the same property that he purchased of Leedom, supposed to be fifty feet on the boardwalk. He does indeed at one time express the opinion that he got more than the fifty feet in width called for by the deed, and says that he regarded the land in dispute as his property, but he also says that he did not intend to go over on the Doyle line, that he thought he was buying fifty feet from Leedom, that he never had in mind to claim more than the deed called for. He admits that he did not do anything to take possession except to take the title and make the lease. This evidence clearly falls far short of establishing that Myers leased to Doyle or put him in possession of any more land than was

described in his own deed from Leedom. That deed bounded the land conveyed by Doyle's line; it fixed that line by the distance from Missouri avenue so that Myers must be presumed to have known its exact location, and we must assume from his own testimony in the absence of the lease that it was the land so described that he leased to Doyle. The deed from Leedom does not purport to convey any possessory right in the disputed land, and Leedom had no other right to convey. Not only is there a failure to prove a lease to Doyle, which coupled with a possession acquired from Myers, might estop him to assert his own title, but there is no proof that Myers ever put Doyle in possession. Doyle's title to the land without more gave him a constructive possession. The only actual possession that Leedom is claimed to have had, or to have transferred to Myers, was the possession of some bath houses, at one time removable, but later left on the land. If possession of these bath houses was evidential of a claim of title to the soil adverse to the real owner, Doyle, Leedom seems to have abandoned the claim when he made a deed to Myers by a description bounded by Doyle's line reciting that he became seized by virtue of the deed to him in 1877, which could by no possibility have conveyed any possessory right.

The case is not altered by the fact that Doyle and Henry were permitted to erect, repair and alter buildings which were to become the property of Myers at the end of the term. In the absence of any language to the contrary, this must have the ordinary meaning and relate only to buildings on the demised premises. The rights of Myers were not extended by reason of the fact that the building actually erected was in part on his land and in part on Doyle's land. Such a method of building is not uncommon, and it is as disadvantageous to one party as to the other upon a severance of title to the properties. All that seems to have been necessary in this case, as in most cases of the kind, was the erection of a partition, at the time the present controversy arose, by Moore, the then owner of the Myers tract.

There was a failure to prove title by adverse possession in the plaintiff, and a verdict should have been directed for the defendants. The rule must therefore be made absolute.